**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 26-189 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| MICHAEL MAYENCE | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Indictment, Record Document 28, filed by the defendant, Michael Mayence ("Mayence"). Mayence moves to dismiss the indictment, which charged him with being a person subject to a domestic violence protective order in possession of a firearm in violation of 18 U.S.C. § 922(g)(8), arguing that the statute is unconstitutional facially and as applied to him. For the following reasons, the Motion to Dismiss Indictment, Record Document 28, is **DENIED**.

### Background

Louisiana State Police ("LSP") executed a search warrant at the home of Mayence on April 19, 2026. Record Document 1-1 at 2. While executing the warrant, officers observed multiple firearms in the house but did not seize them. *Id.* Instead, LSP relayed to agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that firearms were displayed on steps leading to the second floor. *Id.* ATF agents later learned there was an active domestic violence protection order filed

against Mayence that prohibited contact between Mayence and his ex-wife and children and that prevented him from possessing firearms. *Id.* at 3.

The protective order was granted following an October 12, 2024 incident where Mayence texted his sister that he was going to kill his ex-wife and children. Record Document 40-1 at 4. After receiving the texts, Mayence's sister was concerned enough to report him to the Bossier Parish Sheriff's Office ("BPSO"). *Id.* BPSO deputies went to Mayence's house where they found him drunk and lying down in his driveway. *Id.* Mayence admitted to the responding officer that he had been binge drinking for five to seven days, his level of intoxication effected his decision making, he was tired of life, and "did not give a fuck anymore." *Id.* Thereafter, Mayence was taken into protective custody and transported to the VA Medical Center for evaluation and treatment. *Id.*

On April 23, 2026, ATF agents obtained and executed a federal search warrant for Mayence's home. Record Document 40 at 3. Agents located four firearms and ammunition inside the residence and arrested Mayence. *Id.* On May 7, 2026, a grand jury returned a one-count indictment against Mayence for violating 18 U.S.C. § 922(g)(8), Possession of Firearms or Ammunition by a Person Subject to a Domestic Violence Protective Order. Record Document 11. Mayence now challenges § 922(g)(8) as unconstitutional both facially and as applied to him.

## Standard

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine

without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When a motion to dismiss an indictment presents a question of law, a court may resolve the motion before trial. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778, (2010)). But that right is not "unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

The Supreme Court established a two-step test for evaluating Second Amendment challenges to firearm regulations. *United States v. Bruen*, 597 U.S. 1 (2022). The Court must first decide whether "the Second Amendment's plain text covers an individual's conduct…." *Id.* at 17. If it does, "the Constitution presumptively protects that conduct." *Id.* To justify regulation, the Government has the burden to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* The Government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30. If the regulation is consistent with historical tradition, "a court [may] conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 17. (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)).

## Analysis

Mayence raises three arguments: 18 U.S.C. § 922(g)(8)(C)(ii) is unconstitutional facially and as applied to him and "exceeds Congress' authority under the Commerce Clause." Record Document 28-1 at 10. He acknowledges that this facial challenge is foreclosed by the United States Court of Appeals for the Fifth Circuit's decision in *United States v. Perez-Gallan*. 125 F.4th 204 (5th Cir. 2024). *See* Record Document 28-1 at 4. He also admits his Commerce Clause argument is foreclosed in the Fifth Circuit by *United States v. Pierson*, 139 F.3d 501 (5th Cir. 1998). *See* Record Document 28-1 at 10. Mayence raises these claims only to preserve them for further review. Record Document 28-1 at 4, 10. Thus, the facial challenge and commerce clause challenge to 18 U.S.C. § 922(g)(8) are denied.

Mayence claims that § 922(g)(8)(C)(ii) is unconstitutional as applied to him because the Government cannot meet its burden under *Bruen*. Record Document 28-1 at 9. He argues "the surety and going armed laws discussed in *Rahimi* have no bearing on [his] case" and "there is no historical analogue to a disputed divorce giving rise to permanent disbarment of an individual convicted of no crime." *Id.* In support of his argument, Mayence points to the fact there is no explicit finding in the protective order that he is a credible or actual threat. *Id.* at 5. He also alleges the firearm ban is permanent because the protective order never expires. *Id.* at 6. Finally, he notes that allegations of abuse are common in divorce and custody proceedings. *Id.* at 8.

In *Rahimi*, the Supreme Court held that if "a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may – consistent with the Second Amendment – be banned from possessing firearms while the order is in effect." Rahimi, 602 U.S. at 690. In deciding the case, the Court rejected a Second Amendment challenge to § 922(g)(8). *Id.* at 693. Since the Government offered ample evidence to demonstrate the Second Amendment permits disbarment of individuals under § 922(g)(8)(C)(i), the Supreme Court did not need to decide whether regulation under § 922(g)(8)(C)(ii) was permissible. *Id.*

After the Supreme Court's decision in *Rahimi*, the Fifth Circuit addressed a facial challenge to § 922(g)(8)(C)(ii) and found it constitutional "even if the order [does] not include an explicit 'finding that such person represents a credible threat.'" *United States v. Perez-Gallan*, 125 F.4th 204, 215 (5th Cir. 2024) (citing 18 U.S.C. § 922(g)(8)(C)(i). The Fifth Circuit took the same historical tradition the Supreme Court used for § 922(g)(8)(C)(i) and applied it to § 922(g)(8)(C)(ii) with equal force. *Perez-Gallan*, 125 F.4th at 213-214.

Under § 922(g)(8)(C)(ii), a person is prohibited from possessing firearms while "subject to a court order that…explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). *Rahimi* provides that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698. The

Fifth Circuit considered both together and concluded this meant "that if a court order necessarily implies that the defendant poses a clear threat of violence to another, he can be disarmed consistently with the Second Amendment…." *Perez-Gallan*, 125 F.4th at 214.

Referencing their discussion in *United States v. Emerson*, the Fifth Circuit noted when § 922(g)(8) was enacted, "'Congress legislated against the background of the almost universal rule of American law that for a temporary injunction to issue, there must be a likelihood that irreparable harm will occur.'" *Perez-Gallan*, 125 F.4th at 214 (citing *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). The Fifth Circuit reasoned that hopefully for all protective orders, the issuing court found there to be an actual threat even if there was no explicit finding. *Perez-Gallan*, 125 F.4th at 215.

Mayence argues that § 922(g)(8)(C)(ii) is unconstitutional as applied to him because the issuing court did not explicitly find him to be an actual credible threat. Record Document 28-1 at 5. He cites to the lack of initials by the issuing judge in the Order of Protection. Record Document 40-3 at 2.

To grant the protective order, the issuing court would need an explicit or implicit finding that Mayence posed a credible threat of violence toward his ex-wife and their children. Mayence's threat to kill his ex-wife and children while possessing multiple firearms was sufficient for an implicit finding. On October 12, 2024, BPSO deputies were sent on an investigative call after Mayence's sister made a report regarding him. Record Document 40-1 at 4. She stated Mayence texted her threats

saying he was going to kill his ex-wife and both of their children. *Id.* He continued he would kill his sister if she reported his threats to the police. *Id.* After deputies arrived at his residence, Mayence was taken into protective custody and transported to the VA for medical evaluation and treatment. *Id.*

After this incident, Mayence's ex-wife filed a Petition for Protection from Abuse on behalf of herself and their minor children. Record Document 40-2. In the petition, Mayence's ex-wife marked that Mayence had slapped, punched, choked/strangled, shoved, and kicked her and/or the children. *Id.* at 2. She also marked that he threatened her and/or the children with bodily harm, threatened her and/or the children's lives, and "abused petitioner's children." *Id.* Mayence's ex-wife noted indicators of potential danger to her and/or the children: "abuse has been more severe over the past year," "defendant owns/possess firearm(s)," and "defendant has threatened/attempted suicide." *Id.* at 3. While describing the October 12, 2024 incident, she stated that Mayence wanted to die by cop suicide. *Id.* Mayence's ex-wife also shared past incidents of abuse. *Id.* She alleged Mayence physically abused both her and the children. *Id.* She stated he has broken bones and choked her several times and that he allowed his dog to attack their son. *Id.* She also stated that "Mayence has threatened to kill [her] several times" and threatened to kill himself in front of the children. *Id.*

The 2024 Order of Protection resulted from the October 12, 2024 incident where Mayence was taken into protective custody following threats to kill his ex-wife and children. The judge issuing the protective order initialed express orders

prohibiting "the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury." Record Document 40-3 at 3. The protective order also barred Mayence from possessing a firearm or ammunition for the duration of the protective order because of the judge's express orders prohibiting the foregoing behaviors. *Id.* at 7.

Mayence points to the fact that his ex-wife also sought protective orders in 2014 and 2021. Record Document 41-2, 41-3. In 2021, the temporary restraining order was not made a protective order because the issuing judge found no allegation of recent serious domestic violence. Record document 41-4 at 5. This supports that a court will not issue a protective order without at least an implicit finding that the subject poses an actual threat. By issuing the 2024 protective order, the Court implied it was satisfied that Mayence posed a credible threat of violence to his ex-wife and children. Mayence also notes the Court heard a one-sided presentation of evidence, but it was his choice not to take his opportunity to be heard after he received actual notice of the hearing. Record Document 28-1 at 5, 1-1 at 3.

Mayence next argues the protective order never expires and results in a permanent firearm ban for him that is unconstitutional under the Second Amendment. Record Document 28-1 at 8. However, the protective order has a clear expiration date that is found on the first page. Record Document 40-3 at 1. The order is only effective through May 27, 2026. *Id.* Although some parts of the order are non-expiring, the order itself does expire. *Id.* The permanent orders are not to harass and stalk, not a permanent ban on firearms, and as the Government points out, the

protective order had not yet expired when Mayence was arrested. Record Document 40 at 6.

Finally, Mayence argues the protective order was a way of avoiding conflict associated with divorce and custody proceedings. Record Document 28-1 at 8. This argument is unconvincing. Mayence's ex-wife did not call the BPSO on October 12, 2024. Record Document 40-1 at 4. His own sister reported him because of threats he made. *Id.* Mayence's ex-wife did not pursue a protective order to avoid conflict in other divorce and custody proceedings. She pursued a protective order because Mayence made threats to kill her and her children. Record Document 40-1 at 4. As a person in possession of multiple firearms and ammunition, Mayence had the means to act on these threats.

Mayence had every opportunity to attend the protective order hearing to dispute the allegations against him. He did not. In fact, when confronted by law enforcement, Mayence acknowledged making the threats but claimed he was only venting to his sister. Record Document 40-1 at 4. When issuing the protective order, the state court was faced with serious allegations of past abuse, an individual in crisis with serious substance abuse issues, and recent threats by Mayence to kill his wife and children. There could not be a more textbook example of a case where a protective order was needed, and the state judge obviously found an actual existing threat.

## Conclusion

For the above reasons, the Court finds that 18 U.S.C. § 922(g)(8)(C)(ii) is constitutional as applied to Mayence. There is clear evidence the order prohibiting

him from certain behaviors implied he is an actual threat to his ex-wife and children. Accordingly, Mayence's Motion to Dismiss Indictment, Record Document 28, is **DENIED**.

**DONE AND SIGNED** at Shreveport, Louisiana, this 14th day of October, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE